## John Harvey v. People of State of Illinois.
### Gen. No. 11,851.

1. VERDICT—*when not disturbed in criminal case.* A verdict in a criminal case will not be disturbed unless there appears from all the evidence a reasonable and well-founded doubt of the guilt of the accused.

Action of assault. Error to the Criminal Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 27, 1905.

JAMES T. BRADY and THOMAS J. PEDEN, for plaintiff in error; EDWIN J. RABER, of counsel.

CHARLES S. DENEEN, State's Attorney, and JOHN R. NEWCOMER, Assistant State's Attorney, for defendant in error.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Plaintiff in error was tried and found guilty of an assault with a dangerous and deadly weapon. Upon writ of error to this court the plaintiff urges four grounds for reversal: (1) That no assault was made with a deadly weapon; (2) that plaintiff acted in self-defense; (3) that there is a serious doubt of the guilt of the plaintiff upon the evidence; and (4) that the trial court erred in giving certain instructions tendered by the People, and also erred in refusing to give other instructions tendered by the plaintiff.

The contentions of the plaintiff may be reduced to two: First, the verdict is not supported by the evidence; and, second, the jury were improperly instructed.

The affray occurred at the crossing of 92nd street and Harbor avenue, in the city of Chicago. The Belt Line Ry. Co. tracks, which run north and south, intersect 92nd street at this point. The South Chicago street car tracks run southeast and northwest over this intersection. Christianson, the person upon whom the assault was made, at the time in question, May 29, 1904, was and for 30 months prior thereto

had been in the employ of the Belt Line Ry. Co. as watchman at this crossing. His shanty stood next the street, and distant about 12 feet from the railroad tracks. The plaintiff ran a passenger launch between 92nd street and the government breakwater. The boat landing was a little more than a block away from this crossing. In behalf of plaintiff and at least one rival boat, it was the custom to solicit passengers at this crossing. Christianson was crippled in his right arm. Plaintiff had lost his left leg and always walked with a heavy cane.

Early in the morning of May 29, 1904, William Wiggins was on this crossing soliciting passengers for plaintiff. Christianson told him and others with him to get off the track. Wiggins went to the boat landing. In a few minutes he came back, accompanied by the plaintiff. At that time Christianson was in his shanty. Wiggins staid outside, near the tracks, while the plaintiff went into the shanty and commenced a conversation with Christianson. There was a struggle in the shanty, and in a very brief space of time the men came out clinched and contesting each with the other. When they reached the tracks they went down with Christianson underneath. While they lay there, a shot was fired from Christianson's revolver. The plaintiff then got up with the weapon in his hand and walked away. He was uninjured, while Christianson was badly hurt. Doctor Perry, who was at once called, and who treated him, says: "Found wounds upon him; one scalp wound on the back of the head, one on the front part of the forehead; the one on the back was contused and lacerated, was made by a blunt instrument; one on the forehead was about one and one-half inches long, running from the forehead backwards, was also made by a blunt instrument; the bone was bare. Had some other minor bruises, but I did not look after them." The foregoing facts are not disputed.

As to what occurred in the shanty the testimony is in conflict, and that conflict is irreconcilable.

The evidence of the People, as given by Christianson and by James Duffy, tends to prove that the plaintiff after he

came into the shanty used profane language toward Christianson and then struck him one or more times over the head with a heavy cane held in his right hand. This cane, which was put in evidence, was of oak, three feet long, an inch and one-half in diameter at one end and an inch at the other; that this cane when found in plaintiff's boat by the police officers had blood upon it; that Christianson grappled with plaintiff and called to Duffy, who was outside the shanty, that Harvey was murdering him; that Christianson tried to get his gun, which was in his hip pocket, but was not able to draw it, and that then the men came struggling out of the shanty.

The evidence of the plaintiff, as given by the plaintiff and by William Wiggins, tends to prove that he dropped his cane outside of the door of the shanty as he grappled with Christianson; that as soon as he stepped in Christianson reached for his gun and swore he would shoot him, and then plaintiff grabbed the hand Christianson had on the gun and grasped him by the throat with the other hand. That in swaying back and forth Christianson's head came in contact with a shelf in the shanty, and that the wound on the back of the head was caused by striking the rail as he fell on the tracks.

Five witnesses testified that the reputation of the plaintiff for truth and veracity was bad.

We cannot set aside the verdict of the jury on the facts, unless there appears from all the evidence a reasonable and well-founded doubt of the guilt of the accused. Steffy v. People, 130 Ill., 99; Bonardo v. People, 182 Ill., 416; Henry v. People, 198 Ill., 181; McCracken v. People, 206 Ill., 220.

From a consideration of the entire testimony we are impressed with the belief that the jury did not err in coming to the conclusion which inheres in their verdict, that the plaintiff, while he and Christianson were in the shanty, struck the latter twice upon the head with the cane in evidence.

The court gave twelve instructions at the request of the

People. Four of these were objected to by the plaintiff. The court also gave six instructions tendered by the plaintiff, but marked others offered by him as "refused." The plaintiff urges that the refusal of instructions Nos. 19, 20 and 21 was reversible error. It is not necessary for us to set out the instructions, of which complaint is made, nor to comment upon them severally and in detail. We have examined all of the instructions tendered, whether given or not given, and we find that the given instructions, considered as a whole, fully and fairly state the law as applicable to the theory of each of the contending parties, and that the refused instructions are covered by those given. Kennedy v. People, 40 Ill., 497; Henry v. People, 198 Ill., 191, 197.

The judgment of the Criminal Court is affirmed.

*Affirmed.*